[No. 8554. Department Two. February 17, 1910.]

*In the Matter of the Petition of the* COMMERCIAL BANK OF SNOHOMISH COUNTY.

SNOHOMISH IRON WORKS *et al.,* Plaintiffs, v. GUHR LUMBER COMPANY, *Defendant.*[1]

APPEAL—REVIEW—FINDINGS—EXCEPTIONS. Findings of a referee which are not excepted to import verity.

CHATTEL MORTGAGES—SALE OF PROPERTY—PRIORITIES. Where an understanding that a corporation was to purchase and pay for certain personal property, delivered to and used by it, was not carried out or completed until after the other party thereto had given a chattel mortgage thereon, there was at most but an executory contract of sale when the mortgage was given, and the completed sale was subject to the mortgage.

Appeal from a judgment of the superior court for Snohomish county, Still, J., entered October 23, 1909, upon findings of a referee, in proceedings in a receivership to determine priority of a chattel mortgage. Reversed.

*Padgett & Bell,* for appellant.

*M. J. McGuinness* and *Robert McMurchie,* for respondent.

[1]Reported in 106 Pac. 1124.

RUDKIN, C. J.—On the 31st day of July, 1908, a receiver was appointed for the property of the Guhr Lumber Company, an insolvent corporation, by the superior court of Snohomish county, at the suit of the Snohomish Iron Works and others. The receiver qualified and took into his possession all property of the corporation, including certain teams and a logging outfit which had previously belonged to one Otto Olson. On the 28th day of March, 1908, Olson mortgaged the teams and logging outfit in question to the Commercial Bank of Snohomish county, and also to one McKeough, a former partner, to secure certain promissory notes. A controversy arose between the holders of the mortgages and the receiver as to the validity of the mortgage liens, and the present proceedings were instituted by the former to have their claims adjudged a prior lien on the mortgaged property, or the proceeds of its sale, in the hands of the receiver. The sole question at issue between the parties was the ownership of the mortgaged property at the time of the execution of the mortgages; and by consent of all parties concerned, the case was referred to a referee to take testimony upon that issue, and to report the testimony, together with his findings of fact thereon, to the court. The referee reported the following findings, to which no exceptions were taken:

"That Otto Olson purchased two thousand dollars in stock of defendant and became one of the active managing officers, in March, 1907; that at that time he was in possession of the logging outfit covered by the mortgage; that a portion of the outfit, a span of horses and some of the tools and logging implements, was property that had belonged to the firm of McKeough & Olson, which dissolved in late 1905, or early in 1906; that at the time said firm dissolved this property was left in possession of Olson, all the other assets of the firm being equally divided between the two members of the firm; that Olson continued in possession of same, using it as his own, without interference or claim of interest from McKeough; that the span of horses had been purchased by McKeough with his own funds during the time he and Olson

were in partnership; that at the time Olson purchased stock in defendant corporation and became active in its management, he placed the logging outfit in possession of defendant and it so continued in the possession of defendant and was used by it up until the receiver was appointed; that there was a mutual understanding between Otto Olson and the other officers of the defendant that defendant would purchase the outfit, and that it was to pay for same either in cash or in stock of the company, to pay cash if the company was financially able to do so; that the understanding that the company was to purchase the outfit was not fully carried out and completed until subsequent to the execution of the mortgage to the Commercial Bank and to McKeough, to wit: in April, 1907, when stock certificates were issued to Olson in payment for the outfit; that Olson was credited on the books of the company with the agreed value of the outfit in November, 1907, but that credit was entered by the bookkeeper without Olson's knowledge; that the money for which the mortgage was executed to the Commercial Bank of Snohomish was borrowed for and used by the defendant, and the same officers and stockholders with whom Olson had the understanding that the defendant would purchase the outfit represented to the bank that Olson was the owner of the property at the time the mortgage was given and the money borrowed."

Inasmuch as the findings of the referee were not excepted to, they import verity under the rule so often announced by this court. In determining whether title to personal property has or has not passed under a contract of sale, the primary consideration is one of intention. In this case the referee found, in substance, that there was an understanding between Olson and the lumber company that the company would purchase the property and pay for it in cash or in stock of the company, but that such understanding was not fully carried out or completed until after the execution of the mortgages. This finding shows clearly that there was at most but an executory contract of sale at the time the mortgages were given. The completed sale was, therefore, subject to the mortgages and the rights of the mortgagees are para-

mount and superior to the rights of the lumber company and its receiver.

The judgment will be reversed, with directions to enter a judgment establishing the mortgage liens, and for such other orders as may be necessary in the premises.

PARKER, DUNBAR, CROW, and MOUNT, JJ., concur.